UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION – BAY CITY

IN RE:

| | |
|---|---|
| MATTHEW ERIC SCHULTZ AND JENNIFER SCHULTZ, Debtors. _____/ | Case No. 22-20090-dob Chapter 13 Proceeding Hon. Daniel S. Opperman |

OPINION REGARDING CONFIRMATION OF DEBTORS' CHAPTER 13 PLAN

The Debtors, Matthew and Jennifer Schultz, propose a Chapter 13 Plan that crams down the two claims of Grogan Investments LLC ("Grogan"). Grogan objects to this treatment and states it is a lessor and cannot have its claim crammed. Alternatively, Grogan argues the value of the property in question is undervalued by the Debtors, that the interest rate is too low, and that the Plan is not feasible.

Jurisdiction

This Court has subject matter jurisdiction over this proceeding under 28 U.S.C. §§ 1334, 157(a), and E. D. Mich. LR 83.50(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L (confirmations of plans).

Findings of Fact

The parties agree that the record is complete and that the facts are generally undisputed as to the specific issue of whether the transaction between the Debtor Matthew Schultz and Grogan is a lease or a security agreement.

Mr. Schultz wanted two outbuildings and to that end he signed two documents titled "Executory Contract/Unexpired Lease" ("Contracts") to procure an 8' x 10' Portable Garage Style Storage Building and a 14' x 20' Portable Lofted Garage Style Storage Building. The 8' x 10'

1

Lofted Garage has a cash price of $3,250.19, which Mr. Schultz paid in 60 monthly installments of $115.25 plus sales tax of $6.92 monthly. The total amount to be paid for this Garage is $6,915.00. The 14' x 20' Lofted Garage has a cash price of $6,548.36 with 60 monthly installments of $232.21 plus sales tax of $13.93 per month. The total amount to be paid for this Garage is $13,932.60. Each Contract contained the following paragraphs:

> Rental Purchase Agreement entered into this day April 29, 2020 between Scotts RTO, LLC (Lessor) and Name (Lessee) Matt Schultz
>
> . . .
>
> **2.** **Security Deposit:** When you sign this Agreement you must pay us a Security Deposit of $0.00 which we will hold as security for the performance of your obligations under this Agreement. When this Agreement expires, we will return the Security Deposit to you within 30 days, less any amounts that you still owe us. Security Deposit may be used to pay for charges or costs you owe us due to your breach of the Agreement. If we use any of these funds during this Agreement, you agree to restore security deposit to its full amount immediately.
>
> . . .
>
> **6.** **Rental Payments [8' x 10' Garage]:** The monthly rental payment is $115.25 plus sales tax of $6.92 plus optional Liability Damage Waiver Fee of $0.00 for a total monthly payment of $122.17.
>
> **6.** **Rental Payments [14' x 20' Garage]:** The monthly rental payment is $232.21 plus sales tax of $13.93 plus optional Liability Damage Waiver Fee of $0.00 for a total monthly payment of $246.14.
>
> . . .
>
> **9.** **Rental Purchase Ownership [8' x 10' Garage]:** If you make 60 monthly payments in a row, plus the CRA, you will have paid a Total Cost of $6,915.00 not including Liability Damage Waiver or Sales Tax and will own the Property. Or, you can exercise an early purchase option at any time by paying the cash price minus 45% of all monthly payments made at the time, plus CRA amount, plus sales tax for ownership. You will not obtain ownership unless you pay the Total Cost or exercise your early purchase option. The Total Cost does not include other fees and charges like sales tax, LDW, or late fees.

9. **Rental Purchase Ownership [14' x 20' Garage]:** If you make 60 monthly payments in a row, plus the CRA, you will have paid a Total Cost of $13,932.60 not including Liability Damage Waiver or Sales Tax and will own the Property. Or, you can exercise an early purchase option at any time by paying the cash price minus 45% of all monthly payments made at the time, plus CRA amount, plus sales tax for ownership. You will not obtain ownership unless you pay the Total Cost or exercise your early purchase option. The Total Cost does not include other fees and charges like sales tax, LDW, or late fees.

10. **Rental Term and Payment Schedule:** This Agreement is for one month. It begins when the Property is delivered. After that, you have three options: (1) you can continue using the Property by making a rental renewal payment in advance; (2) you can purchase the Property (see Item 9); or (3) you can return Property to us with no further obligation, except for any past due payments.

11. **Termination:** You can terminate this Agreement at any time without penalty by returning the Property to us or making arrangements with us for its return. If you fail to make a timely rental renewal payment, this Agreement terminates automatically and you agree to return the Property to us.

. . .

13. **Use of the Property and Alterations:** You cannot allow the Property to be altered in any manner without our prior written consent. This includes adding shelves, the addition of equipment or accessories or placing signs on the Property. You cannot affix the Property to real estate in such a manner that it cannot be removed without damage. You cannot allow the property to be used for any unlawful purpose. You cannot use the Property as a residence, nor for housing any animal(s). The Property must not be used as a dwelling. The Property must be accessible to us at all times.

After the Garages were delivered, Scotts RTO, LLC assigned its interest to Grogan by way of the following Assignment:

**Assignment**

Seller, Scott's RTO, LLC. assigns this contract to Grogan Investments, LLC. In [sic] accordance with the seller's assignment appearing below. Seller sells and assigns to Grogan Investments, LLC and/or its successors all rights, title, and interest in the retail installment contract. Seller gives assignee full power, either in its own or in the seller's name, to take all legal or other actions which seller could have taken under this contract.

The Debtors filed their Chapter 13 Petition on February 4, 2022. They propose to treat Grogan as a Class 5.1 secured creditor, cram the value of the 8' x 10' Garage to $2,648.60 and 14' x 20' Garage to $3,178.32 with a 4% interest rate. Grogan objects to this treatment and initially argues that the transactions are leases and should be entitled to protection under 11 U.S.C. § 365.

The Court heard arguments on this initial issue on September 29, 2022, and took this matter under advisement.

Applicable Law

The Court refers to state law to determine the nature and intent of the rights of the parties to property. *Butner v. U.S.*, 440 U.S. 48, 55 (1979). Debtors have the burden of proof as the parties seeking to characterize the lease as an instrument other than a lease. *Duke Energy Royal, LLC v. Pillowtex Corp. (In re Pillowtex, Inc.)*, 349 F.3d 711, 716 (3d Cir. 2003); *In re QDS Components, Inc.*, 292 B.R. 313, 321-22 (Bankr. S.D. Ohio 2002).

Michigan law controls per the terms of the Contracts, specifically the "NOTICE" at the end of Paragraph 20. Michigan has adopted the new version of UCC section 1-201(37). The original parties to the Contracts appear to be Michigan residents, the Contracts were signed in Michigan, and presumably performed in Michigan. The applicable Michigan statute is M.C.L.A. § 440.1203, which states:

> (1) Whether a transaction in the form of a lease creates a lease or security interest is determined by the facts of each case.
>
> (2) A transaction in the form of a lease creates a security interest if the consideration that the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease and is not subject to termination by the lessee, and any of the following are met:
>
> > (a) The original term of the lease is equal to or greater than the remaining economic life of the goods.

4

(b) The lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods.

(c) The lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or for nominal additional consideration upon compliance with the lease agreement.

(d) The lessee has an option to become the owner of the goods for no additional consideration or for nominal additional consideration upon compliance with the lease agreement.

(3) A transaction in the form of a lease does not create a security interest merely because any of the following are met:

(a) The present value of the consideration the lessee is obligated to pay the lessor for the right to possession and use of the goods is substantially equal to or is greater than the fair market value of the goods at the time the lease is entered into.

(b) The lessee assumes risk of loss of the goods.

(c) The lessee agrees to pay, with respect to the goods, taxes, insurance, filing, recording, or registration fees, or service or maintenance costs.

(d) The lessee has an option to renew the lease or to become the owner of the goods.

(e) The lessee has an option to renew the lease for a fixed rent that is equal to or greater than the reasonably predictable fair market rent for the use of the goods for the term of the renewal at the time the option is to be performed.

(f) The lessee has an option to become the owner of the goods for a fixed price that is equal to or greater than the reasonably predictable fair market value of the goods at the time the option is to be performed.

(4) Additional consideration is nominal if it is less than the lessee's reasonably predictable cost of performing under the lease agreement if the option is not exercised. Additional consideration is not nominal if either of the following are met:

(a) When the option to renew the lease is granted to the lessee, the rent is stated to be the fair market rent for the use of the goods for the term of the renewal determined at the time the option is to be performed.

5

(b) When the option to become the owner of the goods is granted to the lessee, the price is stated to be the fair market value of the goods determined at the time the option is to be performed.

(5) The "remaining economic life of the goods" and "reasonably predictable" fair market rent, fair market value, or cost of performing under the lease agreement must be determined with reference to the facts and circumstances at the time the transaction is entered into.

Thus, under Michigan law, the "facts of each case" must be examined in order to answer the question of whether a transaction is a true lease or security agreement. A two-step analysis is to be made from this point. First, under the "Bright-Line Test," a "'transaction in the form of a lease creates a security interest if the consideration that the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease and is not subject to termination by the lessee, and . . . [t]he original term of the lease is equal to or greater than the remaining economic life of the goods.'" *Sunshine Heifers, LLC v. Citizens First Bank (In re Purdy)*, 763 F.3d 513, 519 (6th Cir. 2014) (quoting applicable Arizona law).

If the determination cannot be made under the Bright-Line Test, the transaction is to be analyzed under the "economics-of-the-transaction" test, which focuses on "two particular factors: (1) whether the lease contains a purchase option price that is nominal; and (2) 'whether the lessee develops equity in the property, such that the only economically reasonable option for the lessee is to purchase the goods.'" *Purdy*, 763 F.3d at 520-21 (quoting *Park W. Fin. Corp. v. Phoenix Equip. Co. (In re Phoenix Equip. Co.)*, No. 2:08-bk-13108-SSC, 2009 WL 3188684, at *10 (Bankr. D. Ariz. Sept. 30, 2009)). "If there is a meaningful reversionary interest—either an up-side right or a down-side risk—the parties have signed a lease, not a security agreement. If there is no reversionary interest, the parties have signed a security agreement, not a lease." *QDS*, 292 B.R. at 332-33.

6

Analysis

Under the Bright-Line Test, the answer to the question of whether this is a true lease or security agreement is not clear. While the Debtors do have the right to cancel the Contracts before the end of the term in Paragraph 10, the 60-month term of the Contracts does appear to be for the full economic life of the garages because in Paragraph 9 a purchase option is offered by paying the specified "total cost" of the garage or exercise a formulated "early purchase option." It is unclear whether the 60-month term in the Contracts was for the full economic life of the garages or if ownership of such could be obtained at the end of the term for what would be considered to be nominal consideration. Thus, the Court cannot make this determination under the Bright-Line Test.

The Court next turns to the economics-of-the-transaction test. As distinguished from the agreements in the *Purdy* case, the Contracts in this case contain a purchase option through one of two means: (1) payment of the "total cost" as specified, which "does not include other fees and charges like sales tax, LDW [Liability Damage Waiver], or late fees"; or (2) exercising an "early purchase option," which is the cash price minus 45% of all monthly payments made at time of payment, plus payment of the "Customer Reserve Account" balance as specified, plus sales tax. The "total cost" payment option lacks any residual payment at the end of the term of the Contracts, which favors the Contracts being disguised security agreements. The second purchase option is a bit more complex to calculate, but appears would roughly equate to the same "total cost" discounted for early payment.

Conclusion

The Court concludes that the Contracts between Debtors and Grogan are disguised security agreements under applicable Michigan and applicable law. Confirmation is currently adjourned to

November 10, 2022, and the parties should take whatever action is appropriate incorporating this conclusion.

**Not for Publication**

**Signed on November 7, 2022**



/s/ Daniel S. Opperman

**Daniel S. Opperman
United States Bankruptcy Judge**